Peck, J.
The principal and indeed only ground, taken in the-argument, for the reversal of this judgment, is the alleged error of the district court, occurring at the trial, in not permitting John Bates, a witness produced by the plaintiffs in error to prove “ certain conversations” had ^between him and ¥m. P. Reznor, an intermediate owner of the bill, some time after its maturity, and while-tho bill was the property of said W. P. Reznor, touching the bill and the liability of the parties thereon. That part of the bill of exceptions, which relates to the production of said witness and the-rejection of his testimony by the court, appears in the statement of the case.
According to the bill of exceptions, the district court of Lucas-county refused to permit proof of statements made by the holder and owner of a dishonored bill, upon which other parties were-apparently liable, touching their liability upon it, when offered in-evidence by the parties thus apparently bound. If the bill of exceptions correctly delineates the action of the court and the circumstances under which the decision was had, it is difficult to-discover the principle upon which the ruling was made. It could not have been from any real or supposed legal disability on the-part of the intermediate holder of commercial paper, who has transferred it to another, by his acts and declarations before its transfer, to affect its validity in the hands of a subsequent bona fide holder; for it was a dishonored paper when it was transferred by him, and the defendant in error, its subsequent recipient, could not claim protection under that salutary principle of the commercial law.. Nor could it have been because William P. Reznor was himself a competent witness, and might have been examined in the causes *5 (his statements as to the liability of the other parties to the bill, while in his ownership and possession, in derogation of his rights, were original, and not mere hearsay testimony. Nor could it have been because William P. Reznor, himself a witness in the case, had ■not been previously interrogated respecting these conversations. 'They were competent as original evidence, reflecting upon the legal liability of the plaintiffs in error, and might be offered by them, without previously interrogating him respecting his statements; the object being to establish the issue, and not merely to •discredit Reznor.
*We might solve this difficulty, and satisfactorily account /for the ruling of the court, perhaps, if we were at liberty to con-' ■sider the circumstances under which the first bill of exceptions was framed and then altered, and the testimony tending to show that , the conversations, if any, were in fact subsequent to the transfer of the bill by W. P. to John P. Reznor. If the conversations offered ,in evidence were, in fact, subsequent to the transfer to the defendant .in error, they were liable to rejection as mere hearsay, and if offered •to discredit- W. P. Reznor, he should have been first interrogated respecting them, and, in either case, they would have been rightfully excluded.
But this can not be done. We must take the bill of exceptions .as it now reads, to be true — importing verity, and unexplainable ■by other testimony.
And upon the record, as it now stands, two questions arise:
1. Did the court err in rejecting the testimony offered by the plaintiffs in error?
2. Was that error, as shown by the bill of exceptions, of such character and significance as requires at our hands a reversal of the judgment subsequently rendered for the defendant in error?
Every error in the admission or rejection of testimony will not, .as of course, authorize a reversal of the judgment. As a general rule, it is only in cases where, from the facts stated in the bill of exceptions, it is apparent to the court reversing the judgment, not only that error has intervened, but that that error has been prejudicial, to some extent, to the party excepting, that it will thus interfere and vacate the judgment.
Thus, in Scovern v. State, 6 Ohio St. 204, where improper questions had been permitted to be asked and answered, defendant ■objecting thereto, but the bill of exceptions did not state the answers *6 nor the substance of them, it was hold to be “ the settled law of Ohio, that in order to justify a reversal of a judgment on error,. the record *must show affirmatively, not only that error has intervened, but that it was to the prejudice of the party taking advantage of it.” Mor is this rule peculiar to Ohio. See Whidden v. Seelye, 40 Maine, 256; Onondaga M. Ins. Co. v. Minard, 2 Comst. 98; Holmes v. Gale & Bowers, 1 Ala. 517.
In State v. Cowen, 7 Iredell, 243, evidence of certain declarations- or admissions had been improperly admitted; but the bill of exceptions did not set out the testimony of the witness. The court said, “for aught we can tell, the declarations proved by him may have been irrelevant and, so, harmless; or they may have been beneficial to the prisoner. It is necessary that the appellant should. show in his exception some error to his prejudice, otherwise the-court can not set aside the solemn verdict of the jury.”
This case and the one cited from 6 Ohio St. 204, were cases in. which the error complained of was the wrongful admission of testimony, and in which the question naturally arose whether the testimony improperly admitted had prejudiced the rights of the party against whom it was admitted; to the solution of which question it was necessary and important to know what was the purport and effect of the testimony which had been delivered to the jury, in order to determine its legal and probable effect upon the verdict subsequently rendered. While it was holden in Duffee v. Pennington et al., 1 Ala. 508, that the rule requiring it to appear affirmatively-in the bill of exceptions or record, that the party had been prejudiced, applied only to cases whore the testimony offered was ruled out on account of the relevancy or competency of the testimony itself,. and not by reason of the incompetency of the witness to testify;, and that where a competent witness was excluded as incompetent, no necessity existed in the party excepting to set out in his bill of exception the matter he expected to prove by the witness, unless; the court, before adjudging the witness incompetent, required the-party offering the witness to state what he expected to prove — the-ground of rejection in such case *being, not on account of the subject-matter he was called to establish, but his legal disability to> ‘testify at all in the case; and that in such cases the court must hold that the party offering the rejected witness was, prima facie, prejudiced by the ruling, and for that cause should reverse the judgment. The same rule, with the same qualification, was also ad *7 judged in the Supreme Court of North Carolina, in the ease of the State v. Jim, 3 Jones (N. C.), 348. It seems to us that the distinction taken in the cases from Alabama and North Carolina, and which is also sanctioned in Kentucky in the case of Force v. Smith, 1 Dana, 151, is correct, and that the general rule laid down in Scovern v. The State, 6 Ohio St. 204, is to be taken with the qualification, that where a witness is rejected for incompetency to testify in the case, the court not having required the party producing the witness to state what he expected to prove by him, the bill of exceptions need not set forth what the witness would prove or was expected to prove, in order to show that the party producing the witness had been prejudiced. In other words, where the witness offered is rejected as incompetent to testify, the court will hold that the party offering the witness has been prejudiced by his exclusion, though the facts he was expected to prove are not stated — the ground of exclusion being one wholly irrespective of the subject-matter of his testimony.
It appears, however, from the bill of exceptions in this case, that John Bates, the witness offered by plaintiffs in error, was not re jected from any supposed incompetency in him to testify in the case, but the rejection was solely on account of the supposed incompetency or irrelevancy of the facts he was offered to prove. It was on account of the subject-matter of his testimony, and not of any legal disability in him to “testify as to facts relevant to the issue. Thus the bill states that the plaintiffs in error “ produced on the stand one John Bates, and offered to prove by said witness certain conversations that then and there took place between said witness and William P. Reznor, a year *or two prior to the commencement of this suit, and before transfer to plaintiff, in regard to said draft and the liability of the parties thereon; to the admission of all which evidence (not which witness) the plaintiff objected, and the court then and there sustained said exception, and refused to permit the defendant to prove said conversations.”
John Bates then was not rejected as being incompetent to testify; but the subject-matter he was called to establish, was adjudged in-com petent or irrelevant.
It being apparent from the bill of exceptions, then, that the ■ testimony was rejected solely on the ground that the facts which the witness was called to prove were incompetent or irrelevant, all the authorities above cited from Ohio, Maine, Alabama, Eorth *8 ■Carolina, Kentucky, and others which might be referred to in New York, Pennsylvania, and elsewhere, and which are referred to by Collier, O. J., in 1 Ala. 508, require that it should appear affirmatively from the bill of exceptions, not only that error intervened, but also that that'error was prejudicial, in some degree, to the complainant.
It is also a well-settled rule of construction, that bills of exception are to be construed most strongly against the party excepting. Perminter v. Kelly, 18 Ala. 719; Andress v. Broughton, 21 Ala. 204.
And when susceptible of two constructions, that which will sustain the judgment will be preferred. Donnell v. Jones, 17 Ala. 689.
This is but another form of stating the rule that the presumption is always in favor of the validity of the judgment. 40 Maine, 274; 3 Litt. 315; 7 Mo. 293.
To apply these principles to the case at bar, let us inquire whether the plaintiffs in error have made it appear affirmatively in their bill of exceptions:
1. That the court below erred in the ruling complained of.
2. That that error was prejudicial to the plaintiffs in error.
*The court did rule, as shown by the bijl of exceptions, that John Bates should not be permitted to prove certain conversations between him and Wm. P. Reznor, prior to the transfer of the draft, in regard to the draft and the liability of the parties thereon; and in view of the case made in the bill of exceptions, we are of the opinion that the district court of Lucas county should have permitted John Bates, when offered by the plaintiffs in error, to state the conversations of Wm. P. Reznor with him, prior to the transfer, in regard to the liability of the parties to the draft — the evidence was relevant to the issue, whether, in its purport, it qualified or affirmed such liability.
Secondly. Is it apparent from the record and bill of exceptions, that the plaintjffs in error have been prejudiced by the ruling of the district court; or, in other words, is it manifest from the record, that the ruling of that court deprived them of any beneficial testimony ?
They wére prevented, it is true, from proving one or more conversations, which Wm. P. Reznor had held with John Bates in regard to the liability of the parties to the bill of exchange, and this is all which the bill of exceptions asserts — nothing .is stated as to the purport, substance, or effect of those con *9 •versations. Wholly unadvised as to the substance and effect of those conversations, how can we say they would have benefited the plaintiffs in error, if John Bates had been permitted to disclose them ? For aught we know, from the statements of the bill of exceptions, Reznor, in those conversations, may have asserted that the draft was still due and unpaid, and complained of the tardiness of the plaintiffs in error. We must look to the bill of exceptions alone for the information, not only as to the competency, but also as to effect of those conversations. It was the duty of the party taking the exception, the objection being as to the subject-matter offered, to have stated in his bill the substance and tendency of the proof offered and rejected. This might be done by stating the facts he expected to establish, advising *the court of its pertinency to the issue and its materiality to himself. 1 Ala. 508, and authorities cited by Collier, C. J., to this point.
The bill of exceptions affirms that they offered to prove by John Bates, certain conversations of his with Wm. P. Reznor, “ in regard to the draft and the liability of the parties thereon but does not inform us what it was that Reznor said upon those occasions, in regard to the liability of the parties to the bill. Clearly, such a statement does not make it apparent to the court that the plaintiffs in error were prejudiced by not being permitted to prove conversations, the purport and effect of which are not in any degree disclosed.
Nor will the merely formal statement of the bill of exceptions, that the plaintiffs in error offered proof of the conversations, in order to maintain the issue on their part, in any degree relieve them from stating the purport and tendency of such conversations. Give to this expression its utmost latitude and it merely amounts to this, that the party expected and believed that those conversations would aid him in maintaining his issue. In this he may have been mistaken — may have altogether misapprehended the tendency and legal effect of the conversations he was desirous to prove — and a . disclosure of the substance or effect of the conversations ruled out, might render it apparent to the legal mind that plaintiffs in error were not prejudiced by the suppression of the testimony. It is the fact of prejudicial action on the part of the court, and not the expectation or belief of the interested party, which the law requires, before reversal, and as to which the judicial mind must be satisfied. It is to be borne in mind that the court below did not, in terms, *10 rule out all declarations of Wm. P. Reznor, but only certain, i. e., particular declarations. We do not undertake to say whát would' have been the effect of ruling, that no declarations of Reznor should be given in evidence — which, in some sense, would be analogous to the rejection of a witness as incompetent. *A11 we do-say is, that where it appears that only “ certain conversations ” were ruled out, it must appear, from the record, that the party excepting was, to some extent, prejudiced thereby, and to make this apparent the tendency and effect of the conversations should be set foi’tk in-the bill of exceptions.
We are, therefore, clearly of opinion that the bill of exceptions-does not-disclose such a state of facts, in regard to the rejection of the testimony of John Bates, as will authorize this court to reverse the judgment.
It is also assigned for error that the court erred in rejecting John Bates as a witness offered on behalf of the plaintiffs in error.
This, for the reasons before stated, is not correct. It is apparent, from the bill of exceptions, that John Bates was not prevented by the court from giving testimony to any facts deemed competent and relevant by the court.
The overruling the motion for a new trial, by the district court, “ because the verdict is contrary to the evidence,” is also assigned for error.
This point is not noticed in the argument, and upon an inspection of the record, we have not been able to discover that this objection is well taken.
We are, therefore, of the opinion that the judgment of the district court, now in review, ought to be and it hereby is affirmed, with costs.
Swan, C. J., and Brinkbrhorr and- Scott, JJ., concurred.