**TENANTS OF MINNESOTA GARDENS, INC., Petitioners,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent,**

Minnesota Gardens, Inc., Intervenor.

No. 89–26.

District of Columbia Court of Appeals.

Submitted Oct. 12, 1989.

Decided March 5, 1990.

Bernard A. Gray, Sr., Washington, D.C., for petitioners.

Frederick D. Cooke, Corp. Counsel at the time the statement was filed, with whom Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., filed a statement in lieu of brief, for respondent.

Stephen A. Goldberg, Washington, D.C., for intervenor.

Before TERRY and SCHWELB, Associate Judges, and KERN, Senior Judge.

KERN, Senior Judge:

Petitioner, Tenants of Minnesota Gardens, Inc. ("tenants"), seeks review of a Decision and Order entered by the District of Columbia Rental Housing Commission ("Commission"). The Commission affirmed a Decision and Order issued by the Rent Administrator of the Department of Consumer and Regulatory Affairs, Rental Accommodations and Conversion Division ("RACD"). The Rent Administrator's Order dismissed with prejudice tenants' petition challenging rent ceiling increases granted in earlier proceedings initiated by their housing provider, Minnesota Gardens, Inc. ("Minnesota Gardens").

Tenants contend in their petition for review that the Commission erred in concluding (1) that the doctrine of collateral estoppel barred tenants from challenging the Certificate of Occupancy of Minnesota Gardens, the intervenor in this action, and (2) that tenants waived their right to challenge Minnesota Gardens' authority to do business in the District of Columbia. We affirm.

Since 1982, tenants have been involved in a dispute concerning rent ceiling increases

sought by Minnesota Gardens. Between 1982 and 1984, Minnesota Gardens filed one capital improvement petition and two hardship petitions with RACD seeking increases in the rent ceiling applicable to its apartment complex. Pursuant to the statute in effect at that time, the Rent Administrator was required to give notice of these petitions to all tenants of the complex and allow them an opportunity to challenge the increases sought thereby. D.C.Code § 45–1527(b) (1981).[1]

On July 17, 1985, tenants filed a tenant petition with the RACD seeking to invalidate the rent ceiling increases that the Rent Administrator authorized as a result of Minnesota Gardens' petitions.[2] Tenants first contended that because Minnesota Gardens' Certificate of Occupancy was invalid when it filed its hardship petitions, the apartment complex was not properly registered at those times and therefore no rent increase was permitted under section 208 of the Rental Housing Act of 1985. D.C.Code § 45–2518(a)(1)(B) (1986 Repl.) ("Rental Housing Act"). Tenants further argued that, at the time of Minnesota Gardens' petitions, the corporation did not have a valid Certificate of Authority to do business in the District of Columbia, and thus was prohibited from collecting rent or filing petitions for rent increases.[3]

■ A Hearing Examiner held that the doctrine of collateral estoppel barred tenants from raising the Certificate of Occu-

pancy issue, and that they waived their right to challenge Minnesota Gardens' Certificate of Authority because they did not raise the issue in response to Minnesota Gardens' original petitions.[4] Acting on behalf of the Rent Administrator, the Hearing Examiner then issued an order dismissing tenants' petition with prejudice. Tenants subsequently appealed to the Commission, which affirmed the Rent Administrator's decision. This petition for review followed.

Tenants first challenge the Commission's determination that they were barred by the doctrine of collateral estoppel from challenging Minnesota Gardens' Certificate of Occupancy. They argue that because the two hardship petitions at issue here have been remanded after appeal to the Commission, they are not "final" judgments and therefore cannot act as a bar to a subsequent action. For purposes of the doctrine of collateral estoppel, however, a decision is "final" when it is conclusively disposed of *in the tribunal in which it was brought*, even if it is later appealed. *See Southern Pac. Communication Co. v. American Tel. & Tel. Co.*, 238 U.S.App. D.C. 340, 347–48, 740 F.2d 1011, 1018–19 (1984); 1B J. MOORE, J. LUCAS & T. CURRIER, MOORE'S FEDERAL PRACTICE, ¶ 0.441[4] (2d ed. 1988). In the instant case, the Rent Administrator issued a final order disposing of each of the rent ceiling increase petitions which tenants now challenge. Therefore, tenants are barred by the doc-

---

1. There is no record before us of Minnesota Gardens' rent ceiling increase petitions, or of any tenant petitions other than the one which is the subject of this petition for review. Tenants do not contend that they had no notice of Minnesota Gardens' petitions.

2. Tenants also challenged an increase granted in response to a third hardship petition, allegedly filed by Minnesota Gardens on April 25, 1982 (H/P 10,184). With the exception of assertions in tenants' original petition and in their brief on appeal, there is no indication in the record that this petition was filed, and it was not considered by the Hearing Examiner or the Commissioner. In any case, our decision with respect to the other three Minnesota Gardens' petitions disposes of tenants' challenge to H/P 10,184.

3. Tenants also claimed that Minnesota Gardens improperly implemented rent increases when there were still appeals pending concerning

those increases. Tenants have not raised that issue in their petition for review to this court, and so we do not address it here.

4. The Hearing Examiner also concluded that because Minnesota Gardens obtained a new Certificate of Authority prior to the RACD hearing on tenants' petition, it retroactively cured its failure to have a valid Certificate during the time of its previous rent increase petitions. Although in the "Procedural History" section of its brief, tenants list this conclusion of the Hearing Examiner as one which is "the subject of this appeal," there is no discussion of the issue elsewhere in their brief. In any case, the Commission upheld the Rent Administrator's Decision and Order on other grounds, so we do not reach the issue here.

trine of collateral estoppel from relitigating issues which were decided in those previous actions.[5] *Id.*

■ Tenants also argue that the Commission erred by holding that they waived their right to challenge Minnesota Gardens' Certificate of Authority. Tenants failed to raise the certificate of authority issue at the time of Minnesota Gardens' rent ceiling increase petitions, and hence, they waived their right to assert the challenge in a collateral tenant petition. *See* 17A W. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 8519 (1987).[6]

Tenants contend, however, that because their waiver was not "knowing," it was invalid. In support of this contention, tenants argue that there was no indication on the face of Minnesota Gardens' petitions that its Certificate of Authority had lapsed, and thus there was no way for tenants to have known that Minnesota Gardens was not authorized to do business in the District. They also contend that Minnesota Gardens intentionally misrepresented its status, and thus that it should not be allowed to benefit from its own fraud.

It is true that a party can escape the effects of its waiver where it was unable to assert a defense due to an excusable mistake or an opposing party's fraud. *Thomas v. Marvins Credit,* 76 A.2d 773, 775–76 (D.C.1950). However, the party seeking relief from waiver has the burden of showing that such fraud existed, and that there was no negligence on its part. *Marshall v. Marvins Credit,* 122 A.2d 583, 585 (D.C. 1956). In the instant case, tenants have made no showing that Minnesota Gardens intentionally withheld the lapse of its Certificate of Authority, nor have they demonstrated that their failure to discover the lapsed Certificate was not a result of their own negligence. We note in this connection that corporate status is a matter of public record. D.C.Code § 29–399.24 (1989 Supp.).

■ Finally, tenants contend that waiver analysis is inapplicable here because Minnesota Gardens' petitions for rent ceiling increases were filed in violation of the D.C. Code, and thus Minnesota Gardens should receive no benefit from those particular actions taken in violation of law. Traditionally, courts have voided real estate transactions and contracts entered into in violation of law. *See Ewert v. Bluejacket,* 259 U.S. 129, 42 S.Ct. 442, 66 L.Ed. 858 (1922); *Hartman v. Lubar,* 77 U.S.App. D.C. 95, 133 F.2d 44 (1942), *cert. denied,* 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716 (1943). In cases where a party brings an action which it has no legal authority to file, however, a court will not void the proceeding after the fact. In such cases, the opposing party must ordinarily bring the defect to the attention of the court at the time the action is filed. *See Marshall v. Marvins Credit, supra.*[7] Here, tenants did not bring Minnesota Gardens' lack of authority to the attention of the Commission.

*Affirmed.*

■

---

5. Tenants do not challenge the Hearing Examiner's finding that, after the hearings on the two Minnesota Gardens hardship petitions, it was found that Minnesota Gardens had a valid Certificate of Occupancy.

6. Because we hold that tenants waived their right to challenge Minnesota Gardens' corporate capacity, we do not reach the issue of whether Minnesota Gardens lacked authority to file the petitions at issue here.

7. Tenants also argue that section 206(e) of the Rental Housing Act specifically allows them to challenge rent ceiling increases collaterally. D.C.Code § 45–2516 (1986 Repl.). They did not assert this argument below, however, so we will not consider it here. *See D.D. v. M.T.,* 550 A.2d 37, 48 (D.C.1988).